Filed 9/28/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Marriage of DERIC ANDREW and TRACEY MARIE RANGELL. | B313786 |
| | (Los Angeles County Super. Ct. No. 17NWFL00714) |
| DERIC ANDREW RANGELL, | |
| Appellant, | |
| v. | |
| TRACEY MARIE RANGELL, | |
| Respondent. | |

APPEAL from findings and an order of the Superior Court of Los Angeles County, May Santos, Temporary Judge. (Pursuant to Cal. Const, art. VI, § 21.)  Affirmed.

The Appellate Law Firm, Berangere Allen-Blaine, Aaron Myers; Mark Kuntze for Appellant.

The Severo Law Firm and Michael V. Severo for Respondent.

————————————

# INTRODUCTION

This is an appeal from post-judgment findings and an order determining the amount of attorney fees and sanctions payable by Deric Andrew Rangell to ex-wife Tracey Marie Rangell.[1] The family court ordered Deric to pay a total of $70,000 ($22,000 and $48,000) in attorney fees and costs in the nature of sanctions.

Deric appealed. He argues the trial court abused its discretion in ordering him to pay "excessive" attorney fees and "an egregious amount of sanctions as a result of [Tracey's] litigation." He contends the trial court erred because he cooperated throughout the case, produced the accounting and documents requested, and "demonstrated willingness to settle."

Having reviewed the record in detail, we firmly disagree with Deric. We find no error and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Background Information

Deric and Tracey married on July 2, 1996. They separated on July 18, 2016. They have no minor children.

On September 1, 2017, Deric filed a petition for dissolution of his marriage to Tracey. Tracey filed her response and request for dissolution on October 6, 2017.

## II. Tracey's Request for Order for Accounting and Sharing of Rental Income, and Attorney Fees

On March 13, 2018, Tracey filed a request for order (RFO) for Deric to provide an accounting for all rental income received

---

[1] We hereinafter refer to the parties by their first names, Deric and Tracey.

from their three investment properties[2] since the parties' date of separation and to provide one-half of all profits derived from same. Tracey's RFO also included a request for Deric to contribute $10,000 to her attorney fees and costs "given the disparity in the respective parties' incomes." She explained she earns approximately $2,400 per month while Deric's monthly earnings are "in excess of $15,000." Deric also collects $3,360 in monthly rental income from their rental properties, of which he is in sole control and from which he has "excluded" Tracey. According to Tracey, Deric "has refused to account and share the profits from these investment properties . . . since [their] separation."

In support of her RFO, Tracey provided a *Keech*[3] declaration from her counsel Dorothy L. Carfrae (Carfrae) as to attorney fees and costs. Included as an exhibit was a copy of Carfrae's billing statements to date.

On July 24, 2018, Deric filed his responsive declaration opposing Tracey's RFO and request for attorney fees. He requested that each party bear their own fees. He provided one paragraph in support of his opposition, stating that he and Tracey "are on essentially equal financial footing" and that "much of [Tracey's] financial situation was affected by her conviction for fraud and subsequent house arrest." Deric stated on his income and expense (I&E) declaration that he earns $3,150 in rental

---

[2] The parties' rental properties are located at: 1) 5910 Myrtle Avenue in Long Beach, California; 2) 806 North Washington Street in Ardmore, Oklahoma; and 3) 1500 McLish SW in Ardmore, Oklahoma.

[3] *In re Marriage of Keech* (1999) 75 Cal.App.4th 860.

property income and $6,250 in "other" income. He estimated Tracey's monthly income as $13,333.

At the hearing on Tracey's RFO held July 31, 2018, the court "consider[ed] Family Code[4] section 2030" and "examin[ed] [Tracey's attorney's] *Keech* declaration." The court found "there is a disparity with respect to each party's access to funds." The court further found Deric is "able to pay for his representation as well as [Tracey's]" and awarded $8,000 in attorney fees to Tracey. The court ordered Deric to pay this sum to Carfrae within 45 days (i.e., by September 14, 2018). The court ordered an Evidence Code section 730 expert evaluation to be conducted as to the financial circumstances of the parties, including an accounting for rental property income from the three properties. The court ordered Deric to advance the costs for the evaluator, subject to reallocation at a later date. The hearing was continued to revisit pending issues.

During the January 23, 2019 hearing, the court found Deric had not paid for the 730 evaluation and Tracey's attorney fees "as previously ordered." The court ordered Deric to advance the 730 evaluator's (CPA Michael Krycler of Krycler, Ervin, Taubman & Kaminsky) costs "by next week." Deric was further ordered to pay Carfrae the previously ordered $8,000 within one week. Deric was admonished about not following the court's order.

---

[4] Further undesignated statutory references are to the Family Code.

4

III.     **Settlement Agreement and Judgment of Dissolution**

During a hearing held April 29, 2019, the parties signed and filed a settlement agreement, the terms of which were to form the basis of the parties' judgment of dissolution (judgment). Deric and Tracey stated on the record that they understood and accepted the terms and provisions of the settlement agreement.

The settlement agreement provides, in relevant part:

"The real property at 806 North Washington Street, Ardmore, Oklahoma *shall forthwith be listed for sale* and sold with a *mutually acceptable agent/broker* . . . .  From the net proceeds of sale, escrow shall make the following direct payments:

a) The sum of $11,000 paid directly to . . . Carfrae[;]

b) The sum of $5,854 to Krycler [the 730 evaluator][;]

c) The sums owed to [the] I.R.S. and Calif[ornia] State Franchise Tax Board . . . for any jointly filed tax return [;]

The remaining net proceeds of sale shall be divided equally except [Tracey] shall be paid the sum of $10,000 from [Deric's half] to equalize the [division of] assets and debts.

Escrow shall be directed to pay the remaining mortgage balance on the real property [located] at 1500 McLish Ave[nue] SW, Ardmore, Oklahoma from [Tracey's] share of the net proceeds of sale."  (Italics added.)

The court ordered Carfrae to "prepare the Judgment, serve it on [Deric] for approval . . . and submit to the [c]ourt for signature" by May 30, 2019.

On July 12, 2019, Carfrae sent the proposed judgment to Deric for his review and signature.

On November 22, 2019, the judgment was entered and signed by the court. The judgment memorialized the terms of the parties' settlement agreement.

IV. **Tracey's Post-Judgment RFO for Control and Sale of Rental Property, Accounting and Sharing of Rental Income, and Attorney Fees/Costs**

On October 23, 2019, Carfrae sent a letter to Deric in an attempt to "meet and confer" before filing a contempt action against him. Carfrae reminded Deric that per the April 29, 2019 settlement agreement, he was to list the apartment building located at 806 North Washington Street in Ardmore, Oklahoma [Oklahoma Property][5] for sale "forthwith." A demand was made that the Oklahoma Property be listed for sale on or before November 23, 2019.

On January 23, 2020, Tracey filed an RFO requesting that: 1) the court grant her "control and management" over the collection of rents and sale of the Oklahoma Property; 2) the court order Deric to provide Tracey an accounting of all monies received from the Oklahoma Property since April 29, 2019; 3) the court award Tracey the rental proceeds Deric has continued to collect since the court's April 29, 2019 order and said sum be payable out of Deric's share of the proceeds of the sale of the Oklahoma Property; and 4) Tracey be awarded $15,200 in attorney fees and costs "in the nature of sanctions under [section] 271" payable from Deric's share of the sale proceeds.

In Tracey's declaration filed in support of her RFO, she reminded the court that she first sought an accounting of rental

---

[5]     The Oklahoma Property consists of six apartment units.

6

income received nearly a year before—via her March 13, 2018 RFO; however, to date, Deric had failed to provide any such accounting. Similarly, while the parties' April 29, 2019 settlement agreement and resulting judgment ordered that the Oklahoma Property be listed for sale "forthwith," Deric "failed to use good faith efforts to sell." Deric made himself the broker for selling the Oklahoma Property, without Tracey's consent. Tracey provided as an exhibit a print-out of real estate websites that indicated the Oklahoma Property was "off market" or "not available for sale." Moreover, Deric continued to collect rent from the Oklahoma Property, estimated at approximately $35,000, and did not provide one-half of the rental income to Tracey. Deric failed to pay any attorney fees to date, in violation of prior court orders and the parties' settlement agreement/judgment. Tracey requested, as part of her current RFO, $15,200 in attorney fees and costs in the nature of section 271 sanctions as a result of the fees "incurred by virtue of this post-judgment enforcement action."

Tracey filed a declaration by her counsel Carfrae as to attorney fees and costs. Carfrae stated she had practiced family law for over 30 years and that her current hourly rate is $375. Carfrae and her staff expended a total of 84.5 hours in the matter to date. She confirmed Deric had refused to pay the $11,000 fee award owed. She proposed it would be fair and equitable to order Deric to pay a contributive share in the sum of $15,000 for Tracey's attorney fees and costs, in the nature of a sanction under section 271. Carfrae provided as an exhibit a copy of her billing statement, which showed an unpaid balance owed her office in the amount of $28,594.29.

On March 5, 2020, Deric filed his responsive declaration opposing Tracey's RFO. He believed a "minimal amount of skill was needed to settle" and that Carfrae was "claiming to possess 'special skills and knowledge' to justify these ridiculous fees [but] failed to display anything rising to the standard of 'skillful or knowledgeable.' " Deric stated he "took action" and listed the property and "was not charging commission to increase the net to both sides." It was Deric's position that no request for accounting had been made until this current RFO filing by Tracey. He next stated the Oklahoma Property is not community property because it is owned by Vespia, Inc.—a corporation owned and operated by Deric, and of which he is the sole shareholder.

Deric provided as an exhibit a copy of a judgment and probation order against Tracey—dated more than a decade ago, August 6, 2008—as proof that she was previously found guilty of fraud and owed restitution in the amount of $972,162. Per the fraud judgment against Tracey, she "shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the [c]ourt have been satisfied in full." He believed Tracey's request for full control and management of the Oklahoma Property should be denied "due to her bad character as a known convicted felon."

On July 14, 2020, Carfrae submitted an updated declaration regarding attorney fees and costs. To date, Carfrae and her office had expended a total of 89.3 hours in the matter and the unpaid balance owed to her office was $30,276.59. She confirmed Deric still had not paid the $11,000 in fees ordered more than a year before.

On July 22, 2020, the hearing on Tracey's RFO took place. The parties agreed that each apartment unit of the Oklahoma Property pays $600 in rent per month; the parties further agreed the property needs repair. Molly Russ is the current realtor for the property. The court ordered an appraisal to take place within 21 days. The court ordered Deric to provide Tracey with "an accounting" of the Oklahoma Property; Deric was "not to send [Tracey] bank statements only, [but to also] prepare a line by line accounting of the property." The court reserved the issue of attorney fees and continued the matter.

On August 13, 2020, Deric filed a supplemental declaration where he included, as exhibits, the "raw data files the CPA used to compile his work," bank statements, and the accounting evaluation provided by the CPA. He did not provide receipts or proof of expenditures.

The continued hearing took place on August 27, 2020. The appraiser found the fair market value of the Oklahoma Property to be $274,000. The court ordered Deric to sell the Oklahoma Property to the highest bidder within 60 days; should Deric fail to do so, Tracey was to have exclusive control over the final asking price. The court ordered Deric to provide a full accounting, with receipts and proof of expenditures, for all rental income received until the date of production. The court ruled that all proceeds from the sale of the Oklahoma Property be directed from escrow to Carfrae's attorney-client trust account (IOLTA). The court authorized Carfrae to make an immediate distribution of funds from her IOLTA pursuant to the terms of the judgment. The court awarded Tracey an additional attorney fee award of $7,140, to be paid from Deric's share of the sale proceeds.

The matter was continued to January 21, 2021.

## V.     Tracey's Ex Parte RFO re Sale of Oklahoma Property and Further Attorney's Fees

On October 5, 2020, Tracey filed an ex parte RFO for the court to order Deric to "cooperate in all aspects" regarding the pending sale of the Oklahoma Property and to provide Tracey with the name, address, and telephone number of the escrow and title company he hired to handle the transaction. She also requested further attorney fees in the sum of $5,000 to be paid to her from Deric's share of the sale proceeds.

The court granted Tracey's ex parte RFO and reserved jurisdiction over the request for attorney fees in order to address it at the January 21, 2021 hearing.

## VI.     Tracey's Ex Parte RFO re Transfer of Sale Proceeds and Request for Attorney's Fees/Sanctions

On January 12, 2021, Tracey filed an ex parte RFO for the court to order Deric to immediately transfer to Carfrae's IOLTA, by 4:30 p.m., the sale proceeds in the sum of $241,311.69. Deric refused to share with Carfrae any information about the escrow and title company handling the sale. He completed the sale of the Oklahoma Property but the proceeds were never transferred to Carfrae's IOLTA. Tracey requested an order "that for each day after January 12, 2021 that [Deric] fails to transfer the entirety of the Sale Proceeds to [Carfrae's IOLTA] [Deric] shall pay to [Tracey] $1,000 in sanctions pursuant to [section] 271." Tracey also requested an additional $10,000 attorney fee award in the nature of sanctions.

Deric opposed the ex parte RFO. He argued no exigent circumstances existed to warrant the requested orders. He argued the Oklahoma Property was owned by Vespia which could

10

not be ordered to transfer the funds to Carfrae because it was never joined as a party in the dissolution action. He once more alluded to the fraud judgment against Tracey and argued it "prohibits the disbursement of funds to" Tracey.

The court granted Tracey's requested orders but for the $10,000 additional attorney fee award. The court reserved jurisdiction to address attorney fees at the January 21, 2021 hearing.

VII.    **January 21, 2021 Hearing**

At the January 21, 2021 hearing, both parties were present along with Tracey's counsel and Deric's attorney Vernon C. Tucker (Tucker).

Tracey's counsel informed the court they "received little to no compliance, virtually no compliance with the orders. [Deric] has taken the position that the funds should not be transferred to [the] trust account and that he did not need to transfer the funds as the corporation [(Vespia)] was the one who had the funds, not him." Tracey's counsel reminded the court that Vespia was awarded to Deric per the terms of the judgment, and that he "is the corporation. He is the sole shareholder, the president, and the only one in control of [the sale] funds." Tracey's counsel explained that Deric had sent Tracey written and verbal threats that should Tracey continue with her litigation, that he "will call the feds and indicate to the feds that she is going to come upon some money" so that they garnish any funds Tracey receives. Tracey's counsel further informed the court Deric had refused to provide the names of any of the parties involved in the transaction, nor any information relating to the sale except an unsigned escrow closing statement. He continued "not [to] honor the orders to pay" attorney fees.

11

Tucker argued that according to the fraud judgment against Tracey, "any proceeds she's to receive goes to that federal tribunal," and that Deric "is not going to pay something where he knows that the funds are due to [a] criminal restitution order."

The court disagreed and explained that "whether or not [Tracey] owes the government any money is not relevant to your position. [Deric] is not the holder of the money for the U.S. government. That's her obligation. Whether it's paid, not paid, [that's of] no consequence to [Deric]." "If [Tracey] chooses not to pay it, that's an action the U.S. government can bring upon her. Your client has no standing whatsoever to hold up any funds that are due her based on some action by the U.S. government that he's not a party to."

Tucker next argued that the sale proceeds were released to Vespia because the Oklahoma Property was held in Vespia's name.

The court stated, "[S]o now, [Deric] want to split hairs with regards to, oh, I didn't order that the corporation turn it over? Is that your position, now that he's trying to find some other way not to pay her?" "[T]his is just another tactic of [Deric's] to avoid paying [Tracey] anything with regards to the proceeds from the property . . . . It's been a problem for quite some time. He just refuses to cooperate whatsoever to get her any funds that she is due."

The court expressed frustration about the fact that Deric had not produced to Tracey a copy of the signed closing escrow documents. "[Deric] has, at every hearing, at every point, made attempts to thwart this process." The court ordered him to call the title and escrow company, on the record, to obtain a signed seller's final statement and closing escrow documents, and to

12

send it to Carfrae by email immediately. The escrow officer complied and confirmed to the court that the proceeds transferred to the seller were $241,311.69. The court asked the escrow officer to provide the account information to which the proceeds were sent via wire transfer, but Deric stated he did not authorize the escrow officer to provide said information.

The court warned Deric that it would hold him in contempt. Deric was ordered to transfer the entirety of the proceeds to Carfrae's IOLTA "by close of business tomorrow." The court ruled: "For each day that he delays, it's going to be $1,000. . . . I made that order before. I'm going to start from today. Because now, we know how much the money is, and we know he has the money."

The court, on its own motion, set an order to show cause (OSC) hearing on February 24, 2021, and again "reiterate[d] that every day after tomorrow at 5:00 p.m. that the funds aren't deposited to Ms. Carfrae's trust account, I'm going to impose a $1,000 a day fine on your client." "[Y]our client was thwarting the process and not doing what he was ordered to do, which caused [Tracey] to incur fees."

## VIII.   **February 24, 2021 Hearing and Ruling**

On February 4, 2021, a notice of judgment lien for restitution in favor of the United States (federal notice) was filed in the family law case. The federal notice specified Tracey originally owed criminal restitution in the amount of $967,362, but the amount left to satisfy the judgment is $160,357.98.

Tracey, her counsel, and Tucker appeared at the February 24, 2021 hearing; Deric was not present. The court was informed that Deric did not transfer $241,311.69 in sale proceeds to Carfrae's IOLTA by the January 22, 2021 deadline. Instead,

13

Carfrae's IOLTA received a transfer of $89,065.89 on January 25 and $50,000 on January 26—totaling $139,065.89. Counsel does "not have adequate funds in [the] trust account to . . . pay the debts that are due to [Tracey] pursuant to" the settlement agreement, judgment, and court orders. Counsel apprised the court that from the funds transferred to her IOLTA, her office "has tendered checks to the I.R.S. in the sum of $12,966.09" for the parties' community debt, $11,000 in attorney fees to Carfrae per the judgment, $5,854 to the 730 evaluator, $39,410.77 for the unpaid mortgage balance on the McLish property per the judgment. Deric refused to transfer the $10,000 equalization payment in contravention of the settlement agreement and judgment. Deric also failed to transfer $26,928 for Tracey's one-half of the $53,856 in estimated rental income and had not provided relevant receipts or statements to accurately account for rental income.

Tucker explained to the court that Deric is "still under the belief that, you know, the corporation was not enjoined, and the order was ineffective at the beginning." He also alluded to the federal notice.

Tracey's counsel argued that Deric's behavior warranted sanctions and that the $1,000 a day sanctions order amounted to $34,000 for his failure to transfer the full proceeds for 34 days since the last hearing. Additionally, Tracey "incurred $22,000 [in] attorney's fees in pursuing [these] post-judgment motion[s] for enforcement" and various ex partes.

The court expressed it is "at a loss as to why [Deric] continues to disobey any orders that I make and decide on his own what he's going to transfer and what he's not going to transfer." Tucker explained he has "tried [his] hardest" to have

14

Deric comply with the orders and that it is like "beating [his] head against the wall." The court ruled that it is "going to assess the $1,000 per day, the sanctions that I told him about for not transferring the full amount. So far, that's $34,000, increasing daily. . . . So I don't understand why he continues to disobey a court order."

The court ruled that Deric was to produce all rental accounting documents and transfer the $10,000 equalization payment, $26,928 in rental income, and $22,000 in attorney fees to Carfrae's account. The court then gave Deric *one more chance*—it ruled that if Deric transferred the sums to Carfrae's IOLTA by 5 p.m. on February 26, 2021, then it would "forget about the $34,000 in sanctions." If Deric did not transfer the sums, the $34,000 in sanctions would be "reinstated" in addition to $1,000 a day for continuing in his failure to abide by court orders.

The OSC was continued to March 12, 2021.

## IX. **March 12, 2021 Hearing and Ruling**

Only Tracey and her counsel appeared on March 12, 2021. The court was informed that Deric was no longer represented by Tucker, as a substitution of attorney form was submitted to the court.

Tracey's counsel stated that despite the February 26, 2021 deadline, no additional funds were transferred to the IOLTA account to date. The "sanctions for noncompliance" now total $48,000.

The court found: "If the transfer was completed, the [c]ourt would [have] forgive[n] $34,000.00 in sanctions. If not, the [c]ourt would reinstate the sanctions . . . plus [Deric] would be charged additional sanctions in the amount of $1,000.00 per day

15

for non-compliance." "[T]he sum owed by [Deric] is, including the $48,000 in sanctions at $1,000 a day for his failure to comply with the prior court order to deposit funds into the attorney-client account at Ms. Carfrae's office, is going to be $90,107.91. That's what is owed to [Tracey]." The $90,107.91 sum included the $22,000 attorney fees and costs ordered at the prior hearing.

On May 17, 2021, Tracey filed a "findings and order after hearing" memorializing the court's orders.

On June 9, 2021, Deric filed his notice of appeal from the May 17, 2021 findings and order after hearing.

## DISCUSSION

Deric contends the trial court's findings and order awarding Tracey attorney fees and costs in the nature of section 271 sanctions amounts to an abuse of discretion. He requests that we reverse the order.

Finding no abuse of discretion, we affirm.

## I. **Standard of Review**

A trial court has discretion to award attorney fees in the nature of sanctions against a party who frustrates the policy to promote settlement and cooperation in family law litigation. (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 347; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 995.) Thus, the appellate court reviews an award of attorney fees and costs for an abuse of discretion. (*In re Marriage of Pearson* (2018) 21 Cal.App.5th 218, 233; *In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 82.) Under this standard of review, the trial court's order will be upheld on appeal unless, considering all the evidence viewed most favorably in support of the order and indulging all reasonable inferences in its favor, no judge could

16

reasonably make the order. (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152 (*Sagonowsky*); *In re E.M.* (2014) 228 Cal.App.4th 828, 850.) "Discretion is abused when its exercise is arbitrary, whimsical, or capricious." (*In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1343.) We reverse " ' "only if prejudicial error is found after examining the record of the proceedings below." ' " (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 472.) We review findings of fact forming the basis of a sanctions award for substantial evidence. (*Menezes v. McDaniel*, at p. 347.)

## II.    **Applicable Law**

Section 271 provides the court with a powerful weapon to curb obstreperous conduct in family law proceedings by assessing attorney fees and costs as a sanction for frustrating the policy of the law to promote settlement and reduce litigation costs. (See § 271; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2023) ¶¶ 14:4, 14:72 (Hogoboom & King).)

Section 271, subdivision (a) provides: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the *conduct* of each party or attorney furthers or *frustrates the policy of the law to promote settlement of litigation* and, where possible, to *reduce the cost of litigation by encouraging cooperation between the parties and attorneys.* An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to

17

obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." (§ 271, subd. (a), italics added.)

Section 271, subdivision (b) provides: "An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." (§ 271, subd. (b).) Section 271, subdivision (c) provides: "An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property." (*Id.*, subd. (c).)

The court must take into consideration "all evidence concerning the parties' incomes, assets, and liabilities," in particular the party's ability to pay; and in no event may the amount of the sanction impose "an unreasonable financial burden" against the sanctioned party. (§ 271, subd. (a); *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291–292 [no showing trial court failed to consider sanctioned party's ability to pay]; *In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1083; see also *In re Marriage of Pearson*, *supra*, 21 Cal.App.5th at p. 234.) The party requesting the award, however, is not required to demonstrate any financial need for the award. (§ 271, subd. (a).)

III.   **Analysis**

We address Deric's arguments on appeal.

First, he contends that he "cooperated with" Tracey and her counsel "throughout the case" and "continuously agreed to terms

18

and demonstrated willingness to settle." He believes the trial court "abused its discretion by disregarding significant evidence of [his] attempts to comply."

This contention could not be further from the truth.

The record is replete with evidence demonstrating Deric's steadfast, continued disregard of the court's orders and the terms of the parties' settlement agreement and judgment. He delayed listing the Oklahoma property for sale. He delayed providing an accounting of rental income received, along with bank statements, receipts, and proof of expenditures. He delayed paying court-ordered attorney fees and costs to Tracey and her counsel. He repeatedly argued against transferring the sale proceeds to Carfrae's IOLTA, despite the settlement agreement, judgment, and court's multiple rulings ordering him to do so. He tried to avoid transferring the proceeds by coming up with excuses that have no bearing on the matter at hand, i.e., that the property is owned by Vespia (a corporation under his sole control) and that the money was to be garnished from Tracey due to the fraud judgment and federal notice.

His flagrant disregard of the court's orders began as early as July 31, 2018 when he failed to pay Carfrae $8,000 in attorney fees within 45 days and failed to pay the 730 evaluator's fees. He was first admonished for not following the court's order as early as January 23, 2019. He failed to list the Oklahoma Property for sale forthwith. He made himself the agent for the sale, against Tracey's wishes and without her consent, despite the terms of the settlement agreement and judgment requiring the property be sold "with a mutually acceptable agent/broker."

More than two years later, at the hearing on March 12, 2021, Deric's egregiously uncooperative conduct continued when

19

he refused to make the $10,000 equalization payment, refused to provide Tracey with her one-half of the rental income, and refused to transfer the entirety of the sale proceeds to Carfrae, frustrating the policy of the law to promote settlement and reduce litigation costs. This warranted an imposition of attorney fees and costs in the nature of section 271 sanctions. (*Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1520 [§ 271 authorizes a fee and costs award as a penalty for obstreperous behavior]; see also *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1226 [court acted within its discretion in awarding $5,000 to former wife for former husband's failure to pay full amount of housing costs specified in marital settlement agreement].)

Second, Deric argues he should not be penalized for any delay because the parties' judgment "was not entered until November 22, 2019—almost six months after the date ordered." He also argues that the terms of the settlement agreement and judgment did not specify a "specific date" by which the Oklahoma Property should be sold, and only required it to be sold "forthwith."

Deric's second argument is not well-taken. While it is true that the court ordered Carfrae to prepare and submit the judgment by May 30, 2019, the record provides she sent it to Deric for his signature on July 12, 2019—five weeks late. The record does not specify what caused the delay from July 12, 2019 until the court's entry of judgment on November 22, 2019. Did Deric not timely return the signed judgment to Carfrae to enable her to submit it to the court for filing? We are aware it can take the court weeks or months to review a submitted proposed judgment. Did it take the family law court here some months to review, sign, and enter judgment? The record is silent as to these

20

questions. Plus, Deric cannot take advantage of Carfrae's delay of *five weeks* in submitting the judgment when he delayed abiding by the court's orders and the settlement agreement/judgment *for years*.

Further, putting aside that the April 29, 2019 settlement agreement and November 22, 2019 judgment failed to include a date certain by which the property was to be sold, the fact remains that the court ordered the property to be sold "forthwith." That means immediately. The record establishes that the property was under Deric's sole management and control. And based on the real estate website print-out provided by Tracey as an exhibit in support of her January 23, 2020 RFO, Deric still had not listed the property for sale by that date; the website print-out indicated that the Oklahoma Property was "off market" and "not available for sale."

Third, Deric contends the trial court abused its discretion by awarding sanctions of "$1,000 per day *for, conceivably, an indefinite period*."

We first correct Deric's flawed logic—the court's order of sanctions in the amount of $1,000 a day was not for an indefinite period. It was *conditional* for every day on which Deric failed to comply with the court's repeated orders, the terms of the April 29, 2019 settlement order, and the terms of the November 22, 2019 judgment to transfer the entirety of the sale proceeds to Carfrae's IOLTA. That Deric refused to obey the court's orders for 48 days (not to mention, the preceding two years) resulting in $48,000 in sanctions, is no fault of anyone but Deric.

Here we pause to discuss *In re Marriage of Hargrave* (1995) 36 Cal.App.4th 1313. A *conditional* § 271 sanctions award against wife was upheld on appeal based on "ampl[e]" evidence in

21

the record showing wife "engaged in a series of stratagems to avoid the consequences of [her] failure to contest the 50-50 division of tax liabilities and their agreement to file a joint return." Wife persisted in her attempts to "undo" an improvident deal by first obtaining an IRS declaration of "innocent spouse" status and then using that as a basis for (unsuccessfully) opposing husband's motion to enforce her obligation to pay one-half of the taxes due. (*In re Marriage of Hargrave*, at p. 1323.) The reviewing court found these facts clearly justified a § 271 sanctions award and warranted the trial court's sanctions assessment made contingent on wife's failure to pay her share of the taxes owed to the IRS within 60 days. (*Ibid*.) *In re Marriage of Hargrave* validates the trial court's sanctions order against Deric.

We also remind Deric that the court originally granted the $1,000 a day sanctions order at the January 12, 2021 hearing on Tracey's ex parte request; however, the court then cut Deric a break and did not include the additional $9,000 in sanctions per day from January 12, 2021 until January 21, 2021. The court stated on the record on January 21, 2021: "For each day that he delays, it's going to be $1,000. . . . *I made that order before [but] I'm going to start from today*." (Italics added.) We further remind Deric that the court was empowered to also assess interest at the legal rate on the attorney fees sanctions he owed to Tracey, but the court cut him a break there too. (See *Sagonowsky, supra*, 6 Cal.App.5th at pp. 1156–1157 [$45,000 interest on attorney fees owed by husband was properly assessed against wife under § 271. The interest accumulated when wife's "unscrupulous conduct" delayed husband's enjoyment of his share of marital real property and denied him funds to pay his attorney

fees.].)  The lesson here to Deric is plain: he cannot repeatedly flout the court's orders for years and expect to get away with it, when his conduct delayed Tracey's enjoyment of her share of community property and caused her to incur additional attorney fees and costs in enforcing the court's orders.  " 'Somewhere along the line, litigation must cease.'  [Citation.]  [Husband] has yet to absorb this message," warranting sanctions.  (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1317–318, 1320 ["When making the award, the family court shall consider [Husband's] dilatory tactics . . . and the policy of imposing sanctions in an amount sufficient to deter future similar conduct."].)

Fourth, Deric contends the trial court abused its discretion in failing to consider his financial circumstances when it imposed a "high amount" of attorney fees and sanctions on him. He details the court's March 12, 2021 order of $22,000 in attorney fees and $48,000 in sanctions, and argues, "Absent from the record is testimony or other evidence addressing [his] ability to pay attorney's fees or whether the sanctions would cause a financial hardship to him.  With such large sanctions, [Deric] ended up owing [Tracey] and her attorney almost the entire amount of the proceeds."

We again disagree with Deric and find no abuse of discretion.  We explain why.

We preliminarily address Deric's argument that it is unclear whether $22,000 in attorney fees was awarded under section 271 or sections 2030 and 2032.  The order was made pursuant to section 271.  Tracey did not request the $22,000 as "need-based" pursuant to sections 2030 and 2032; she requested it under section 271 as follows.

23

Her January 23, 2020 RFO included a request for $15,200 in attorney fees and costs "in the nature of sanctions under [section] 271" payable from Deric's share of the sale proceeds. Carfrae provided a declaration outlining her experience, her hourly rate, the total hours of work expended, and an exhibit showing her billing statement with an unpaid balance of $28,594.29. She provided an updated declaration on July 14, 2020 with an updated billing statement showing a balance of $30,276.59. The court reserved the issue of attorney fees at the July 22, 2020 hearing. A year later, on January 12, 2021, Tracey filed an ex parte RFO again requesting an additional award of attorney fees in the nature of sanctions. The court once more reserved jurisdiction to address attorney fees. The issue was finally addressed at the hearings on January 21, 2021, February 24, 2021, and March 12, 2021, resulting in the court's order of $22,000 in attorney fees and $48,000 in sanctions, both pursuant to section 271.

It is true that the only stricture imposed by section 271 is that the sanction may not impose an unreasonable financial burden on the party sanctioned. (§ 271, subd. (a).) It follows, therefore, that the party who wishes to contest their ability to pay any sanctions award (both at trial and on appeal) bears the burden to submit evidence or a current income and expense declaration in opposition to the sanctions request and to present their inability to pay argument at the trial court level, with reference to that evidence. (See *In re Marriage of Corona, supra*, 172 Cal.App.4th at p. 1227; *In re Marriage of Fong, supra*, 193 Cal.App.4th at pp. 291–292; see also Hogoboom & King, *supra*, ¶ 14:265.3.) Deric, however, never argued before the trial court that he could not pay the fees ordered or that they imposed

24

an unreasonable financial burden on him. In fact, he did not even show up at the March 12, 2021 hearing where the court made these findings and order. Failure to raise this argument in the trial court results in its waiver on appeal. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591–592.)

We also find there is no unreasonable financial burden on Deric, as he has approximately $26,928 as his one-half of rental income and $102,000 in sale proceeds in his possession, which can be used to pay the attorney fees and sanctions award. Attorney fees in the form of sanctions are payable only from the *property or income of the party against whom the sanction is imposed*, except that the award may be against the sanctioned party's share of the community property. (§ 271, subd. (c).) There is no suggestion in the record that the trial court disregarded evidence of Deric's ability to pay or that it otherwise abused its discretion in awarding sanctions against him; thus, the imposition of fees as a sanction will be upheld. (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 180.)

Finally, Deric argues the trial court "minimized the potential legal effects of the [federal notice]" and "was unwilling to consider the federal lien a legitimate hinderance in complying with its orders."

Deric made this argument to the trial court on January 21, 2021, which told him "whether or not [Tracey] owes the government any money is not relevant to your position. [You are] not the holder of the money for the U.S. government. That's her obligation. Whether it's paid, not paid, . . . [that's of] no consequence to [you]." "If [Tracey] chooses not to pay it, that's an action the U.S. government can bring upon her. [You have] no

standing whatsoever to hold up any funds that are due her based on some action by the U.S. government that he's not a party to." We agree with the trial court.

## DISPOSITION

We affirm. Costs are awarded to Tracey Marie Rangell.

**CERTIFIED FOR PUBLICATION**


STRATTON, P. J.

We concur:


GRIMES, J.


WILEY, J.

26

**WILEY, J., Concurring.**

Deric Rangell refused to obey a family court order. The order was that he turn over monies to his ex-wife. The court, patiently at first but then with increasing resolve, set deadlines for Rangell to act, eventually on pain of a sanction of $1,000 per day. For 48 days, Rangell defied the court. He appeals the $48,000 consequence of his disobedience, as well as a $22,000 attorney fee the court imposed. The family court's orders were proper under Family Code section 271. We must affirm. Doing so requires us to construe the Family Code. My statutory citations are to that Code.

When construing any code, our job is to effectuate its purpose. (E.g., *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135 (*Apple*).) "The dominant mode of statutory interpretation over the past century has been one premised on the view that legislation is a purposive act, and judges should construe statutes to execute that legislative purpose. This approach finds lineage in the sixteenth-century English decision *Heydon's Case*, which summons judges to interpret statutes in a way 'as shall suppress the *mischief*, and advance the *remedy*.' " (Katzmann, Judging Statutes (2014) p. 31, italics added.)

Our polestar is devotion to the statute's purpose. (*Apple, supra*, 56 Cal.4th at p. 135.)

Section 271 identifies the *mischief* it aims to suppress, which is uncooperativeness and recalcitrance by litigants:

"Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the *conduct of each party or attorney* furthers or *frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging*

1

*cooperation between the parties and attorneys*. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." (§ 271, subd. (a), italics added.)

To summarize, section 271 authorizes "an award of *attorney's fees* and costs . . . ." (§ 271, subd. (a), italics added.) The statute does not require the fees and costs to be *past* expenditures. Evidently, then, the award may relate to anticipated *future* expenditures. Moreover, these awards are "in the nature of a sanction." (*Ibid.*) The party requesting an award of attorney's fees and costs is *not* required to demonstrate any financial need for the award. (*Ibid.*)

Section 271 sanctions must have some connection with attorney fees. (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152–1157.)

Both portions of these sanctions had a proper connection to attorney fees. The $22,000 sum was to compensate Tracey Rangell for her *past* attorney fees. And the $1,000-a-day incentive sanction sought to avoid the need for *future* attorney fees. As the court stated, Deric Rangell "was thwarting the process and not doing what he was ordered to do, which caused [Tracey Rangell] to incur fees."

2

This $1,000-a-day incentive sanction properly aimed to stanch future bleeding. A reasonable person would have noted the incentive, obeyed the order, and eliminated the need for more attorney hours and fees on this issue. The family court selected a reasonable daily penalty to motivate Deric Rangell to comply with its orders and to avoid future hearings and fees. The amount was appropriate: noticeable but not crushing.

But Deric Rangell proved immune to logic and ran up the bill.

This daily prospective penalty properly counted as an award of "attorney fees": the conditional $1,000-a-day penalty created an appropriate incentive for Deric Rangell to stop prolonging the case. The penalty aimed to suppress the *mischief* and to advance the *remedy*.

Our ruling is important, not only to litigants and trial courts, but also to the public at large, which has an abiding interest in effective judicial administration. The public rues the glacial pace and dismaying cost of litigation. When musing about suicide, Hamlet counts "the law's delay" among the "whips and scorns of time." *Bleak House* jeers at litigation that "so exhausts finances, patience, courage, hope, so overthrows the brain and breaks the heart" that wise counsel is to "Suffer any wrong that can be done you rather than come here!"

Section 271 empowers family courts to cope with the recalcitrance of litigants like Deric Rangell. For future litigants, the lesson is simple: defying court orders is a losing proposition.

WILEY, J.

3